

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-21-00221-CR
_____

LEONICIO ALFREDO SHARPE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 42nd District Court
Taylor County, Texas
Trial Court No. 28,210-A; Honorable James Eidson Presiding

May 25, 2022

MEMORANDUM OPINION

Before PIRTLE and PARKER and DOSS, JJ.

Appellant, Leonicio Alfredo Sharpe, appeals from his conviction by jury of the second-degree felony offense of indecency with a child by contact[1] and the resulting sentence of imprisonment for life.[2] Appellant challenges his conviction and sentence

---

[1] TEX. PENAL CODE ANN. § 21.11(a)(1).

[2] TEX. PENAL CODE ANN. §§ 12.33, 12.42.

through three issues.  He argues: (1) the evidence was insufficient to support the jury's verdict of guilty; (2) the trial court abused its discretion when it permitted extraneous act testimony; and (3) the automatic life sentence as applied to Appellant was cruel and unusual punishment in violation of the Eighth Amendment.  We will affirm the judgment as reformed herein.[3]

## BACKGROUND

In 2016, S.W. was sixteen years old.[4]  She had been in the care of the Texas Department of Family and Protective Services from the time she was thirteen or fourteen. She frequently ran away from her placements to return to her mother's home.  At the time of the incident at issue before us, S.W. was using methamphetamine and marijuana but was attempting to stop.[5]

S.W. testified that in November 2016, she returned to her mother's home where her mother lived with Appellant.  She and Appellant were alone.  She testified she was sitting in the kitchen when he came in and offered her some methamphetamine.  She initially refused but accepted after Appellant told her that her mother would not find out. She smoked the methamphetamine and felt "a little drowsy and dizzy."  She said Appellant put his hand on her thigh and said, "You're so pretty; you're so sexy."  She pushed his hand off and said, "no."  He did it again, but she kept telling him no.  She

---

[3] Originally appealed to the Eleventh Court of Appeals, sitting in Eastland, this case was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001.  Should a conflict exist between precedent of transferor court and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court.  TEX. R. APP. P. 41.3.

[4] S.W. was twenty-one by the time of trial.

[5] At trial, S.W. testified she had been sober since October 31, 2017.

testified he then "came behind me and he put his hand on my chest and I tried to stand up and he pulled me back into the chair and he just kept repeating the same thing, 'You're so pretty, you're so sexy, and your mom will never find out.'" S.W. said he then "put his hand into my shirt under my bra onto my breast area and grope[d] my breasts. After that I told him no and pulled his hand out of my shirt and proceeded to tell him no." S.W. told the jury Appellant then got physical and tried to get her back into the chair. She scratched his arm and went to stay in her mother's RV in the backyard until her mother returned the next morning.

The Department of Family and Protective Services took S.W. back into its care and placed her in the Hendrick Home. There, she met Destiny. She and Destiny ran away and went to an apartment. The next day, the two went to S.W.'s mother's home. She told Destiny to "stay in the room, lock the door, don't go to the bathroom by yourself, don't go to the kitchen by yourself without me because I had knew [sic] what had happened to me, and I didn't want her to put herself in that position." S.W. woke that night to find Destiny "skitzing really bad."[6] She said only she, Destiny, and Appellant were in the home at the time, so Appellant had to be the source of the methamphetamine. The following day, she and Destiny were in the kitchen making noodles. Appellant came in and grabbed Destiny around the waist, hugging her from behind with his hands locked in front of her around her belly, saying "She's mine. She's mine." S.W. told him to let her go. He finally did but as they were walking out of the kitchen, he came up behind S.W. and grabbed her. She pulled his hands apart and as she walked away, he slapped her rear end. After

---

[6] At trial, S.W. described "skitzing out" as "basically bouncing off the walls, can't sit still long enough, like rambling a lot."

3

hearing the evidence, the jury found Appellant guilty as charged in the indictment and the court sentenced him to life imprisonment pursuant to applicable law.

### ANALYSIS

#### ISSUE ONE—SUFFICIENCY OF THE EVIDENCE

Via his first issue, Appellant contends the evidence was insufficient to support the jury's verdict of guilty to the charged offense of indecency with a child by contact. Appellant contends it was not rational for the jury to rely on S.W.'s testimony because it "was unreliable, she was abusing drugs including methamphetamine, marijuana, and other pills, and her complete testimony was in conflict." The State disagrees, noting S.W.'s testimony provided proof of each of the essential elements of the offense, no corroboration of her testimony was needed, and the jury was the sole judge of the weight and credibility of S.W.'s testimony and was charged with resolving any conflicts in the evidence. We find no error in the State's arguments.

#### STANDARD OF REVIEW

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the fact finder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Queeman*, 520 S.W.3d at 622.

4

The fact finder alone judges the weight and credibility of the evidence.  TEX. CODE CRIM. PROC. ANN. art. 38.04; *Queeman*, 520 S.W.3d at 622.  We do not re-evaluate the evidence's weight and credibility, nor may we substitute our judgment for that of the fact finder.  *Queeman*, 520 S.W.3d at 622.  Rather, we determine whether the necessary inferences are reasonable based on the cumulative force of the evidence when viewed in the light most favorable to the verdict.  *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).  *See Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence.").  We must presume that the fact finder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution.  *Murray*, 457 S.W.3d at 448-49.  *See also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

### APPLICATION

Appellant was charged via indictment with the offense of indecency with a child by contact.  The indictment alleged that Appellant "with intent to arouse or gratify the sexual desire of said [Appellant], engage[d] in sexual contact with [S.W.] by touching the breast and genitals of the said [S.W.], a child younger than seventeen (17) years of age."  The indictment also set forth Appellant's two previous final felony convictions for sexual assault and failure to comply with sex offender registration.

The Texas Penal Code provides that a person commits an offense if, with a child younger than 17 years of age, the person engages in sexual contact with the child or causes the child to engage in sexual contact.  TEX. PENAL CODE ANN. § 21.11(a)(1).  Under the statute, sexual contact includes the following acts, if committed with the intent

5

to arouse or gratify the sexual desire of any person: (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person. TEX. PENAL CODE ANN. § 21.11(c).

On appeal, Appellant argues the jury's verdict was not rational for several reasons. He first argues S.W.'s story was inconsistent because although she initially testified she was using methamphetamine and marijuana and that her mother knew and was trying to help her get sober, she also testified she thought Appellant first meant her mother would not find out about her using methamphetamine on the day in question. However, S.W. then testified Appellant actually meant that her mother would not find out about Appellant and S.W. having sexual intercourse if they did so. Thus, Appellant argues, S.W.'s story was inconsistent because either S.W.'s mother was aware she was using methamphetamine, or her mother was not.

Second, Appellant argues S.W.'s testimony was inconsistent concerning Destiny. During a hearing outside the presence of the jury, S.W. testified Appellant grabbed Destiny in a manner that was playing and joking. However, in front of the jury, S.W. testified Appellant grabbed Destiny with his hand locked around her but did not testify he did so in a playful or joking manner.

Third, Appellant argues no rational fact finder could believe S.W. because she told the jury that when she usually smoked methamphetamine, she "skitzes" out, hears things that are not said, and gets paranoid but the methamphetamine she smoked with Appellant

6

made her dizzy and drowsy.[7]  She said she believed it was laced with something but continued to smoke several bowls because she did not feel "comfortable enough to say anything or stop smoking or do anything."[8]  She also said that because she was trying to get sober, the methamphetamine she smoked with Appellant would not have been sufficient to make her see or hear things.[9]  Appellant argues that S.W. was either using drugs during the time of this incident or she was trying to get sober and the "conflict was such that no rational factfinder could believe that she was attempting to be sober, while admitting to abusing methamphetamine, marijuana, and sometimes pills, nor could they believe that she would know if something was laced or not."  As such, he argues, the contradicting testimony was abundant and rendered the jury's finding irrational, particularly given the lack of corroboration of S.W.'s claims.

The State disagrees, arguing the evidence was sufficient to support the jury's finding.  S.W. testified she and Appellant were alone in the home when he touched her.  She said she was sitting in the kitchen when he came in.  He offered her some methamphetamine.  She initially refused but accepted after Appellant told her that her mother would not find out.  She smoked the methamphetamine and felt "a little drowsy and dizzy."  She said Appellant put his hand on her thigh and said, "You're so pretty;

---

[7] During re-direct examination, S.W. testified she had never felt tired while smoking methamphetamine until she smoked with Appellant on the day in question.  She agreed this was the one time it made her tired and she said that when she used methamphetamine at other times after the incident with Appellant, she did not feel tired.

[8] During cross-examination, S.W. testified she smoked "maybe two to three bowls of it."  She agreed it was "somewhere around" six inhalations.

[9] S.W. testified that when she uses methamphetamine, she usually "skitzes out."  However, she also said she had seen and heard things while using methamphetamine.  But, she said there was only one incident in which she heard things that were not being said and that was when the methamphetamine was laced with PCP.

you're so sexy." She pushed his hand off and said "no." He did it again, but she kept telling him no. She testified he then "came behind me and he put his hand on my chest and I tried to stand up and he pulled me back into the chair and he just kept repeating the same thing, 'You're so pretty, you're so sexy, and your mom will never find out.'" S.W. said he then "put his hand into my shirt under my bra onto my breast area and grope[d] my breasts." On further questioning, she clarified that Appellant touched her vaginal area over her clothes and touched her breasts under her clothes. She said she believed Appellant touched her with the intent to arouse or gratify his sexual desire. The State contends this testimony, if believed by the jury, was sufficient to support its verdict. We agree.

The uncorroborated testimony of a child sexual abuse victim alone is sufficient to support a conviction for a sexual offense. TEX. CODE CRIM. PROC. ANN. art. 38.07; *Chapman v. State*, 349 S.W.3d 241, 245 (Tex. App.—Eastland 2011, pet. ref'd). *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (child victim's testimony alone was sufficient to establish element of penetration beyond a reasonable doubt). Moreover, corroboration of the victim's testimony by medical or physical evidence is not required. *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi—Edinburg 2008, no pet.); *Cantu v. State*, 366 S.W.3d 771, 775-76 (Tex. App.—Amarillo 2012, no pet.); *Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). S.W. testified to each element of the offense with which Appellant was charged. The jury is the sole judge of the credibility of witnesses and is free to accept or reject any or all of the evidence presented by either side. *Cantu*, 366 S.W.3d at 777 (citing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim.

8

App. 2008)).  The sufficiency standard is deferential and accounts for the fact finder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts.  *Monroy v. State*, No. 11-19-00257-CR, 2021 Tex. App. LEXIS 6277, at *11 (Tex. App.—Eastland Aug. 5, 2021, no pet.) (mem. op., not designated for publication) (citations omitted).  If the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the verdict, and we defer to that determination.  *Id.* (citations omitted).  We thus conclude a rational jury could have found the essential elements of indecency with a child by contact were established by a reasonable doubt.  Therefore, the evidence was sufficient, and we overrule Appellant's first issue.

### ISSUE TWO—ADMISSION OF EXTRANEOUS EVIDENCE

By his second issue, Appellant challenges the trial court's admission of extraneous evidence.  During trial, the court held a hearing out of the presence of the jury concerning evidence of Appellant's conduct with S.W.'s friend, Destiny.  At the conclusion of the hearing, the trial court permitted the admission of that evidence.  Appellant contends the trial court abused its discretion in doing so because the State had not previously provided notice as required and because the evidence was cumulative and involved an individual other than the alleged victim, S.W.  The State responds that Appellant failed to timely request notice under Rule 404(b)(2) and the admitted evidence was admissible under Rule 404(b) to show intent, motive, and opportunity to commit the offense against S.W.  Further, under Rule 403, the testimony was more probative than prejudicial and thus, admissible.  We again agree with the State's position.

9

The extraneous evidence at issue before us involved an incident S.W. discussed during trial. During S.W.'s testimony, the trial court held a hearing outside the presence of the jury to consider her testimony regarding an incident between Appellant and Destiny. During that hearing, S.W. testified that although she had told Destiny not to go anywhere in the home without her, she woke one night to find Destiny high and "skitzing really bad." She said only she, Destiny, and Appellant were in the home at the time, so she surmised Appellant was the person who provided drugs to Destiny. The next day, S.W. and Destiny were in the kitchen making noodles. Appellant came up behind Destiny and grabbed "her from behind and is holding her saying, She's mine. She's mine. Playing around joking." S.W. told him to stop, and he finally let her go. S.W. was walking back to the room when Appellant came up behind her and grabbed her. She pulled his hands apart to make him let go and he "slap[ped] [her] on [her] ass." In the presence of the jury, S.W. testified similarly. She said Appellant "grabbed [Destiny] from behind and was, like, hugging her from behind with his hands locked in front of her around her belly." He said, "She's mine, she's mine." S.W. did not tell the jury that Appellant appeared to be "playing around" or "joking" as she did during the hearing outside the presence of the jury, but she testified she told Appellant to let her go. He finally did but then came up behind her and grabbed her. She pulled his hands apart and he "slapped [her] rear end." The trial court provided a limiting instruction to the jury before it heard S.W.'s testimony[10] and also included a

---

[10] Before S.W. testified about this incident, the trial court told the jury, "I'm going to instruct you that you are about to hear some evidence concerning other crimes, wrongs, or other acts. That evidence is admitted for a limited purpose. That purpose being to show, if it does, motive, intent, or absence of mistake. And that is the only purpose for which you can consider the evidence."

limiting instruction in its written charge to the jury at the conclusion of the guilt-innocence phase of the trial.[11]

### NOTICE

Appellant first argues the information alleged and related by S.W. at trial regarding Destiny was not included in the Rule 404(b) notice provided by the State prior to trial. As such, Appellant argues, that information was a surprise and was unduly prejudicial. Because the State did not provide any notice of that evidence, Appellant asserts, the trial court should not have admitted it. The State disagrees, arguing Appellant was not entitled to notice because he did not timely request it. We agree.

Rule 404(b)(2) permits the admission of evidence of a crime, wrong, or other act for certain purposes, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident. TEX. R. EVID. 404(b)(2). When a defendant in a criminal case makes a timely request, the prosecutor is required to provide the defendant reasonable pretrial notice of the prosecutor's intent to introduce such evidence in the State's case-in-chief, unless it is same-transaction evidence. *Id.* However, under Rule 404(b), the State's duty to provide "reasonable notice" of intent to introduce certain extraneous offenses is only triggered by a "timely request" by the accused. *Mitchell v. State*, 982 S.W.2d 425, 427 (Tex. Crim. App. 1998). No such request

---

[11] That instruction provided as follows:

**Extraneous Offense**

You have heard evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case. This evidence was admitted only for the purpose of assisting you, if it does, for the purpose of showing the defendant's motive, intent, or absence of mistake if any. You cannot consider the evidence for any other purpose; and you cannot consider the evidence unless you find and believe beyond a reasonable doubt that the defendant committed these acts, if any, were committed. [sic]

by Appellant was made in this matter.  Accordingly, Appellant cannot now complain of the lack of notice as a basis for which the evidence should have been excluded.

### RULE 404(b)

"Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court."  *Jingbo Xu v. State*, No. 11-19-00203-CR, 2021 Tex. App. LEXIS 3554, at *9 (Tex. App.—Eastland May 6, 2021, pet. ref'd) (mem. op., not designated for publication) (citing *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (quoting *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)).  "Thus, a trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard."  *Jingbo Xu*, 2021 Tex. App. LEXIS 3554, at *9 (citing *Devoe*, 354 S.W.3d at 469; *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005)).  "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld."  *Jingbo Xu*, 2021 Tex. App. LEXIS 3554, at *9 (citation omitted).  "A trial court's 404(b) ruling admitting evidence is generally within this zone if there is evidence supporting that an extraneous transaction is relevant to a material, non-propensity issue."  *Id.* (citation omitted).

A trial court's ruling to admit evidence will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case."  *Id.* (citing *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005)).  Further, we will not reverse a trial court's erroneous admission of evidence unless the error affected the appellant's substantial rights.  *Jingbo Xu*, 2021 Tex. App. LEXIS 3554, at *9-10 (citing Tex. R. App. P. 44.2(b); *Sandoval v. State*, 409 S.W.3d 259,

12

287 (Tex. App.—Austin 2013, no pet.) (stating that "erroneous admission of evidence is non-constitutional error" and that "[n]on-constitutional error requires reversal only if it affects the substantial rights of the accused").

Rule 404(b) provides that extraneous-offense evidence "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *Jingbo Xu*, 2021 Tex. App. LEXIS 3554, at *10 (citing TEX. R. EVID. 404(b)(1)). Evidence of other offenses, however, may be admissible when the evidence is relevant to a fact of consequence in the case. *Jingbo Xu*, 2021 Tex. App. LEXIS 3554, at *10 (citing TEX. R. EVID. 404(b)(2); *Montgomery v. State*, 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1991) (op. on reh'g)). Evidence of other crimes or wrongs may be admissible if it "tends to establish some elemental fact, such as identity, intent, or knowledge; tends to establish some evidentiary fact, such as motive, opportunity, plan, or preparation, leading inferentially to an elemental fact; or rebuts a defensive theory by showing, e.g., absence of mistake or lack of accident." *Jingbo Xu*, 2021 Tex. App. LEXIS 3554, at *10 (citing *Montgomery*, 810 S.W.2d at 387-88; TEX. R. EVID. 404(b)(2)). If the trial court determines that the offered evidence has independent relevance apart from or beyond character conformity, the trial court may admit the evidence and instruct the jury that the evidence is limited to the specific purpose the proponent advocated. *Jingbo Xu*, 2021 Tex. App. LEXIS 3554, at *10 (citing *Prince v. State*, 192 S.W.3d 49, 54 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (citing *Montgomery*, 810 S.W.2d at 387-88)). Rule 404(b)(2) is a rule of inclusion, not exclusion. *Jingbo Xu*, 2021 Tex. App. LEXIS 3554, at *10 (citing *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009)).

In the matter before us, the testimony concerning Appellant's conduct with Destiny had relevance apart from showing character conformity—it showed Appellant's opportunity, motive, and intent. In each of the instances, one involving S.W. and one involving Destiny, Appellant inappropriately touched a teenaged female in the kitchen of his home. He held each of them from behind while each had been under the influence of drugs—drugs S.W. testified were provided by Appellant. In the incident involving S.W., she was alone in the kitchen with Appellant when the two of them smoked methamphetamine. He touched her thigh and genitals over her clothing and touched her breasts under her clothing. In the incident involving Destiny, Destiny had been using drugs the night before. The next day in the kitchen, he grabbed her by the waist from behind and said, "She's mine, she's mine." We cannot say based on the evidence before us that the trial court abused its discretion in admitting the evidence concerning Destiny pursuant to Rule 404(b) because it was relevant to show Appellant's opportunity, motive, and intent to commit the offense of indecency with a child by contact against S.W.

### RULE 403

Appellant also contends that the evidence concerning his conduct with Destiny was "so unduly prejudicial that the jury could find Appellant guilty simply because of the additional evidence." He argues that the trial court should not have permitted the testimony because it was far more prejudicial than probative and thus, should have been excluded under Rule 403. The State disagrees, arguing the evidence was not unduly prejudicial and was highly probative. We agree.

We recognize that the trial court remains in a superior position to determine the impact of the evidence and therefore, we measure the trial court's ruling against the Rule

14

403 balancing criteria: (1) the inherent probative force of the evidence along with (2) the State's need for the evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Torres v. State*, No. 08-19-00309-CR, 2021 Tex. App. LEXIS 5708, at *11-12 (Tex. App.—El Paso July 16, 2021, no pet.) (mem. op., not designated for publication) (citing *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006); *Carrillo v. State*, No. 08-14-00174-CR, 2016 Tex. App. LEXIS 9252, 2016 WL 4447611, at *4 (Tex. App.—El Paso Aug. 24, 2016, no pet.) (not designated for publication)).  At the outset, however, we recognize that Rule 403 favors the admission of relevant evidence, including extraneous offense evidence, and presumes that relevant evidence is more probative than unfairly prejudicial. *De La Paz,* 279 S.W.3d at 343 n.17 (citation omitted).  On appeal, Appellant carries the burden to overcome this presumption and demonstrate that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or of misleading the jury. *Torres*, 2021 Tex. App. LEXIS 5708, at *12 (citation omitted).

While Appellant argues the testimony concerning Destiny was unduly prejudicial and had very minimal probative value, we cannot agree that the trial court abused its discretion in admitting it under Rule 403.  The inherent probative force of the evidence was its tendency to show Appellant had the motive, opportunity, and intent to commit the offense of indecency with a child by contact against S.W.  His conduct with Destiny was

15

similar to that with S.W.  It also had the tendency to show that Appellant's conduct with S.W. was not a mistake or an accident.  Thus, the extraneous act evidence had high probative value to show Appellant's motive, intent, opportunity, and lack of mistake.

Moreover, the evidence concerning Destiny was not of a nature likely to confuse or distract the jury from the main issue, i.e., whether Appellant committed the acts against S.W. of which he was accused.  While similar in nature and in circumstance, a rational fact finder would have had no problem distinguishing the two incidents and would not have been unduly influenced by the extraneous evidence.  Moreover, it took very little time for the State to elicit from S.W. the testimony concerning Destiny.  The State did not dwell on or emphasize this testimony and the trial court provided a limiting instruction before the testimony was elicited and again in its written charge to the jury.[12]  Lastly, the evidence concerning Destiny was not cumulative of any other evidence offered at trial.  While we recognize that this evidence was indeed prejudicial to Appellant, all evidence "is likely to be prejudicial to one party or the other."  *Jingbo Xu*, 2021 Tex. App. LEXIS 3554, at *17 (citation omitted).  "It is only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value that Rule 403 is applicable."  *Id.* (citations omitted).  *See also Fischer v. State*, Nos. 03-17-00025-CR, 03-17-00026-CR, 03-17-00027-CR, 2018 Tex. App. LEXIS 10833 (Tex. App.—Austin Dec. 28, 2018, pet. ref') (mem. op., not designated for publication) (finding admission of extraneous offense evidence permissible under Rule 403).

---

[12] Courts generally presume that the jury follows the trial court's instructions in the manner presented.  *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005).  Even if we were to presume error here, Appellant is required to rebut the presumption that the jury followed the trial court's instruction.  He did not do so here and thus, cannot show he was harmed.  *Id.*

Considering the relevant factors, we cannot conclude there is a clear disparity between the degree of prejudice and the probative value of the evidence concerning Appellant's conduct with Destiny. Accordingly, the trial court did not err in admitting the evidence pursuant to Rule 403. Because the trial court did not abuse its discretion in admitting the extraneous evidence, we overrule Appellant's second issue.

### ISSUE THREE—CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT

By his final issue, Appellant contends the trial court violated the Eighth Amendment prohibitions[13] against cruel and unusual punishment and consequently, caused him irreparable harm. He contends the only resolution is to remand the matter to the trial court for a new sentencing hearing. The State responds, arguing Appellant's convictions fall squarely within the plain language of section 12.42(c)(2) of the Penal Code and courts have repeatedly held that the mandatory life sentence "two-strikes policy" does not violate the Eighth Amendment. We find the State's argument persuasive.

The Eighth Amendment to the United States Constitution prohibits sentences that are "grossly disproportionate" to the offense for which a defendant has been convicted. *Luvano v. State*, No. 11-14-00122-CR, 2016 Tex. App. LEXIS 4173, *8 (Tex. App.—Eastland April 21, 2016, no pet.) (mem. op., not designated for publication) (citing *Bradfield v. State*, 42 S.W.3d 350, 353 (Tex. App.—Eastland 2001, pet. ref'd) (citing *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991)). The courts that have addressed whether Texas's habitual offender statute rises to the level of

---

[13] Both the United States Constitution and the Texas Constitution provide protection from cruel and unusual punishment. Because Appellant has not argued that the Texas Constitution offers broader or greater protection than the United States Constitution, we will analyze the issue in accordance with the Eighth Amendment to the United States Constitution. We note the analysis would be the same under either constitutional provision.

being cruel and unusual punishment have concluded that it does not. *Randle v. State*, Nos. 05-20-00290-CR, 05-20-00292-CR, 2022 Tex. App. LEXIS 179, at *8 (Tex. App.—Dallas, Jan. 11, 2022, no pet.) (mem. op., not designated for publication) (citing *Rummel v. Estelle*, 445 U.S. 263, 285, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980); *Harris v. State*, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983) (en banc); *Price v. State*, 35 S.W.3d 136, 143-44 (Tex. App.—Waco 2000, pet. ref'd)). Courts have also held that the length of a criminal sentence is a matter of legislative prerogative and a sentence is not cruel and unusual simply because it is mandatory. *Randle*, 2022 Tex. App. LEXIS 179 at *8 (citing *Rummel*, 445 U.S. at 284-85; *Price*, 35 S.W.3d at 144). Punishment is not cruel and unusual if it is assessed within the range authorized by statute. *Randle*, 2022 Tex. App. LEXIS 179 at *8 (citing *McNew v. State*, 608 S.W.2d 166, 174 (Tex. Crim. App. [Panel Op.] 1978)). *See Espy v. State*, Nos. 07-15-00382-CR, 07-15-00383-CR, 2016 Tex. App. LEXIS 2873, at *2-3 (Tex. App.—Amarillo March 21, 2016, pet. ref'd) (mem. op., not designated for publication) (citation omitted); *Dudley v. State*, Nos. 11-12-00240-CR, 11-12-00241-CR, 2014 Tex. App. LEXIS 4197, at *2 (Tex. App.—Eastland April 17, 2014, no pet.) (mem. op., not designated for publication) (citation omitted). The statutory range of imprisonment for the offense of indecency with a child by contact is punishment by imprisonment for not less than two years or more than twenty years. TEX. PENAL CODE ANN. §§ 21.11(a)(1); 21.11(d); 12.33(a).

The Texas habitual offender statute provides that whenever the offense of indecency with a child by sexual contact (Penal Code § 21.11(a)(1)) is enhanced by a previous conviction for sexual assault (Penal Code § 22.011), that offense becomes punishable by imprisonment for life. TEX. PENAL CODE ANN. §§ 12.42(c)(2)(A)(i) and

12.42(c)(2)(B)(ii)). Here, Appellant pleaded "true" to the enhancement provisions set forth in the indictment, resulting in a mandatory increase from possible imprisonment from two to twenty years to a mandatory term of life imprisonment. As such, this sentence conforms to the statutory sentence mandated by the Legislature—i.e., imprisonment in the Texas Department of Criminal Justice for life.

The purpose of the "two strikes" amendment to the habitual sex offender provisions was to "strengthen Texas's sex-offender laws" to get "sex offenders off the streets and away from potential victims for a longer period of time." *Griffith v. State*, 116 S.W.3d 782, 788 (Tex. Crim. App. 2003); *See also Williams v. State*, 10 S.W.3d 370, 372 (Tex. App.—Tyler 1999, pet. ref'd) (finding the Legislature has an interest in removing habitual sexual predators of children from society and protecting children of this State).

In support of his position, Appellant argues that the pen packet provided to the trial court regarding the prior case for which the State relies showed a 1991 felony conviction for sexual assault under section 22.011 of the Penal Code. TEX. PENAL CODE ANN. § 22.011. He contends that nothing indicates that 1991 conviction involved a child. As such, he contends the policy underlying section 12.42(c)(2) of removing habitual sexual predators of children from society is not applicable in his case. He argues also that the sentence was grossly disproportionate as applied to him because, while he admits he was charged with touching S.W.'s genitals over her clothing and her breasts under her clothing, there was no evidence that his actions caused lasting harm to her. He also asserts that while S.W. was clearly troubled, she was troubled long before his alleged actions in this case.

19

The State argues that the automatic life provision under the plain language of section 12.42(c)(2) is applicable to Appellant. It is undisputed that his prior conviction was pursuant to section 22.011 of the Penal code. It is also undisputed that his conviction concerning the offense against S.W. was pursuant to section 21.11(a)(1) of the Penal Code. Section 12.42(c)(2) plainly states, "Notwithstanding Subdivision (1), a defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life if: (A) the defendant is convicted of an offense: (i) under Section 20A.02(a)(7) or (8), 21.11(a)(1), 22.021, or 22.011, Penal Code; . . . ; and (B) the defendant has been previously convicted of an offense: . . . ; (ii) under Section 20A.02(a)(7) or (8), 21.02, 21.11, 22.011, 22.021, or 25.02, Penal Code." TEX. PENAL CODE ANN. § 12.42(c)(2) (Emphasis added). Indecency with a child by contact, the offense of which Appellant was convicted here, is one of the enumerated offenses under subsection A. Sexual assault, the offense for which Appellant was convicted in 1991, is one of the enumerated offenses under subsection B. Accordingly, Appellant's convictions are encompassed within the plain language of section 12.42(c)(2). The statute does not require that all offenses must be against a child victim. *See, e.g., Culton v. State*, 95 S.W.3d 401, 404 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

Moreover, while Appellant argues there was no lasting harm to S.W., she testified she attended counseling and spoke with her counselor about the incident with Appellant. While we agree there is little evidence concerning the lasting repercussions of the incident with Appellant, we cannot agree that lack of proof of lasting harm is sufficient to render the sentence assessed against Appellant grossly disproportionate. A sentence is grossly disproportionate to the crime "only in the exceedingly rare or extreme case." *Simpson v.*

20

*State*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016) (citing *Lockyer v. Andrade*, 538 U.S. 63, 73, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003)).  This is not one of those cases.  *See Simpson*, 488 S.W.3d at 323 (court has traditionally held that punishment assessed within the statutory limits, including punishment enhanced pursuant to a habitual-offender statute, is not excessive, cruel, or unusual) (citation omitted).

Because Appellant's convictions are encompassed within the plain language of the statute, his sentence is within the permissible range set forth by the Legislature, and courts have found the mandatory life sentence under the statute does not violate the Eighth Amendment to the constitution, we overrule Appellant's third and final issue.

### ERROR IN JUDGMENT

During the court's review of this matter, it came to the attention of the court that the judgment should be reformed because it reflects that the jury assessed punishment, when punishment was actually assessed by the trial court.  When an appellate court has the necessary data and evidence before it for reformation, the judgment and sentence may be reformed on appeal.  *Banks v. State*, 708 S.W.2d 460, 462 (Tex. Crim. App. 1986); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd).  Here, the record reflects that the trial court assessed Appellant's punishment, not the jury as is reflected in the trial court's judgment.  Accordingly, we reform the judgment to reflect punishment was assessed by the trial court.

**CONCLUSION**

Having resolved each of Appellant's issues against him, we affirm the judgment of the trial court as reformed herein.

Patrick A. Pirtle
Justice

Do not publish.